**Loy Lavator BAKER, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 24094.**

United States Court of Appeals
Fifth Circuit.

June 20, 1969.

Rehearing Denied July 30, 1969.

Sydney B. Nelson, Shreveport, La., for appellant.

E. V. Boagni, Asst. U. S. Atty., Shreveport, La., Marshall Tamor Golding, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before JONES and GODBOLD, Circuit Judges, and SCOTT, District Judge.

GODBOLD, Circuit Judge:

On March 19, 1963, two men, one of whom was armed with a .22 caliber pistol, robbed the Minden Bank and Trust Company in Sarepta, Louisiana. After capture they pleaded guilty. Each was given a ten year sentence. Appellant was arrested with them and twice has been found guilty and sentenced to fifteen years for aiding and abetting the

robbery.[1] Appellant's second conviction is before us on this appeal.[2]

The case against appellant is based on the testimony of the two co-conspirators, who told the following story. They robbed the bank, but appellant was the brains behind the scheme. He instigated and masterminded the plan and persuaded the two to join him. He drove them to the bank, pointed out the getaway car, met them after the robbery, took the proceeds, helped dispose of the disguises used, and doled the money out to the two in small portions over the next year.

## I
### Was any life put in jeopardy through use of a dangerous weapon?

The indictment charged appellant with aiding and abetting two men "in the putting in jeopardy, by the use of a dangerous weapon, to-wit: a pistol, the lives" of three bank employees, and "in taking from their presence, by force and violence, certain moneys belonging to" the Minden Bank and Trust Company. Appellant contends that he was entitled to a judgment of acquittal because there was no proof that the life of anyone was put in jeopardy through the use of a dangerous weapon. The argument is two-fold—that there was testimony that the gun was not drawn, and there was no proof that the gun was loaded. The record contains ample evidence from which the jury could conclude the gun was drawn. This makes it unnecessary for us to decide whether the offense described in subdivision (d) may be committed with an undrawn gun.

Turning to the issue of whether it must be proved that the gun was loaded, it has been held that the phrase "puts in jeopardy the life of any person by the use of a dangerous weapon" requires a showing that the defendant so used a dangerous weapon during a robbery that the life of the person being robbed was put in "an objective state of danger." Wheeler v. United States, 317 F.2d 615 (8th Cir. 1963); Smith v. United States, 309 F.2d 165 (9th Cir. 1962); cf. Dorrough v. United States, 385 F.2d 887 (1967), aff'd en banc, 397 F.2d 811 (5th Cir. 1968); Smith v. United States, 284 F.2d 789 (5th Cir. 1960) (construing similar language in 18 U.S.C.A. § 2114—robbery of mail, money or property of United States).

Appellant urges that without proof that the gun was loaded the government has failed to establish either that it was a dangerous weapon or that the lives of the employees were in danger, or both. A gun is commonly known, regarded and treated by society as a dangerous device by both the reasonable man and the person at whom it is pointed, without pause

---

1. This court reversed the first conviction, 357 F.2d 11 (5th Cir. 1966), which was both for aiding and abetting and receiving stolen money, on the grounds that appellant as a principal in the robbery, 18 U.S.C.A. § 2, could not be convicted of receiving the proceeds of that robbery under the rule in Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959), nor could he be prosecuted for both offenses in the absence of an instruction that the jury could convict for either offense but not for both, under Milanovich v. United States, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961).

2. Appellant was convicted under 18 U.S.C.A. § 2113 which provides, in part:
"(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, or any savings and loan association; or

\* \* \* \* \*

"(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both."

to determine whether a round is in the chamber. The primary capacity of a gun to harm—by the discharge of a bullet from the muzzle—plus its apparent capacity to carry out that harm, combined with a highly charged atmosphere and the possibility of action by employees or others to prevent the robbery, is a complex of circumstances in which the person on the scene is in jeopardy of harm which may occur in any one of various ways.

Numerous cases hold that one may be convicted of robbery by means of a dangerous weapon notwithstanding the fact that the gun allegedly used was unloaded. *See e. g.*, State v. Ashland, 259 Iowa 728, 145 N.W.2d 910; Hayes v. State, 211 Md. 111, 126 A.2d 576 (1956); State v. Montano, 69 N.M. 332, 367 P.2d 95; Annot., 79 A.L.R.2d 1412, 1426–28 (1961).[3]

■ We believe that Congress did not envision putting on the government so stringent a burden of proof as that which appellant urges, a burden very difficult to meet if the robber does not fire his gun and leaves the bank with it still in his possession. This would seriously restrict the effectual operation of the statute in its coverage of the most usual weapon employed in robberies.

We hold that a gun used in connection with and at the scene of a bank robbery is as a matter of law a dangerous weapon and that those on the immediate scene of the robbery are placed in an objective state of danger regardless of whether there is proof that the gun was loaded.[4]

## II

### Voir dire examination

■ Appellant claims that the trial court erred in interrupting at crucial points his counsel's voir dire examination of jurors when counsel was attempting to ascertain the effect of adverse publicity. A trial judge has broad discretion in the conduct of the voir dire examination of jurors. Grogan v. United States, 394 F.2d 287 (5th Cir. 1967). We have examined the record with care and find no abuse of discretion by the trial judge.

## III

### Prosecution's closing argument

■■ Appellant insists that in seven specified particulars government counsel overreached permissible limits of argument in his summation, though none was objected to. Most of the remarks

---

3. "An unloaded gun or pistol generally is recognized as a dangerous weapon within the meaning of statutes creating the crimes of robbery, or assault with intent to rob, while armed with a dangerous weapon." 2 Wharton, Criminal Law and Procedures § 546, at 245 (Anderson ed. 1957).

4. In Meyers v. United States, 116 F.2d 601, 603 (5th Cir. 1941) this court said:
 "The pistol may have been only exhibited and not pointed, it may indeed not have been loaded, for only putting in fear is alleged and not actual jeopardy or danger to the life of Jones."
 However, that case dealt only with the requirements for a sufficient indictment under the predecessor statute and not with what proof was necessary for conviction.
 Appellant's argument that the gun must be proved to be loaded has some

support in Price v. United States, 156 F. 950 (9th Cir. 1907). Although not directly overruled the case has not been followed by the 9th Circuit. *See* Evalt v. United States, 382 F.2d 424 (9th Cir. 1967) (bank robbery); Wagner v. United States, 264 F.2d 524 (9th Cir. 1959) (robbery of postal officials).
 *See also* cases which take the approach that there need not be direct evidence that the gun was loaded as long as there is sufficient evidence from which the jury can infer that the gun was loaded. Evalt v. United States, *supra*; Wagner v. United States, *supra*. The 3rd Circuit has followed the *Wagner* case, United States v. Roach, 321 F.2d (3rd Cir. 1963). The 8th Circuit goes somewhat further and constructs a rebuttable presumption that a gun used in a robbery was loaded. Wheeler v. United States, *supra*.

which, singly and in combination, are now said to require reversal under the plain error rule relate to characterizations of what the evidence had shown, and the prosecutor is charged to have stated the evidence either unfairly or inaccurately or both. Comments to the jury may cause reversal though not objected to, but the general principle remains that counsel cannot remain silent, interpose no objections, and after verdict raise for the first time the point that comments were improper and prejudicial. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 238–239, 60 S.Ct. 811, 84 L.Ed. 1129, 1176 (1940); Samuels v. United States, 398 F.2d 964 (5th Cir. 1968), cert. denied, 393 U.S. 1021, 89 S.Ct. 630, 21 L.Ed.2d 566 (1969); Weiss v. United States, 122 F.2d 675, 690 (5th Cir.), cert. denied, 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550 (1941). *See also* Kyle v. United States, 402 F.2d 443 (5th Cir. 1968). Whether done consciously or unconsciously, the "saving up" of unstated multiple and unrelated objections to oral argument, which are cumulated after verdict as a claim for reversal, is antithetical to the basic purpose of objections, which is not to enshrine error for the record but to allow correction to be made at once if possible.

We find that the arguments now questioned are not grounds for reversal as plain error.

## IV

### Reasonable doubt charge

■ In reviewing the court's charge on reasonable doubt we look to the whole instruction rather than isolate our attention on one sentence. McDaniel v. Slade, 5 Cir., 404 F.2d 607 (5th Cir. 1968) [Dec. 9, 1968]. When this is done it is seen that the judge properly and completely defined reasonable doubt. Indeed, he included the very definition sought by appellant in the sentence im-

mediately preceding the one to which appellant objects: "it is a doubt which a reasonable man would entertain and hesitate to act upon." [5]

## V

### Sentence

■ An accused cannot be punished by a more severe sentence because he unsuccessfully exercised his constitutional right to stand trial rather than plead guilty. *See* Thomas v. United States, 368 F.2d 941 (5th Cir. 1966); United States v. Martell, 335 F.2d 764 (4th Cir. 1964); United States v. Wiley, 278 F.2d 500 (7th Cir. 1960). But no showing is made that appellant received a longer sentence because he required the government to try him. He relies on the fact that he, an aider and abettor who pleaded not guilty, received a longer sentence than the two men who pleaded guilty to actually going into the bank. But an aider and abettor is a principal to the crime. 18 U.S.C.A. § 2 (1950). The fifteen year sentence received by appellant was within the statutory limits, *see*, 18 U.S.C.A. § 2113(d), and will not be reviewed. Thompson v. United States, 381 F.2d 664 (10th Cir. 1967); United States v. Melendez, 355 F.2d 914 (7th Cir. 1966); Marin v. United States, 352 F.2d 174 (5th Cir. 1965).

## VI

### Grand jury transcript and selection of the grand jury

■ No transcript of grand jury proceeding was prepared. There is no constitutional requirement that grand jury proceedings be transcribed. United States v. Cianchetti, 315 F.2d 584 (2d Cir. 1963). The failure to transcribe does not warrant the dismissal of the indictment. Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973, 974 (1966) does not change this rule.

5. Appellant argues that the combined effect of the voir dire interruptions, the prosecutor's closing argument, and the court's charge on reasonable doubt re-

quire the granting of a new trial. Because of our disposition of these points, this assertion passes from the case.

There is no merit to the contention that the grand jury was selected in an unconstitutional manner because the jury commission positively considered the race of Negroes in an effort to achieve a jury list which represented a fair cross section of the community. Brooks v. Beto, 366 F.2d 1, (5th Cir. 1966); Rabinowitz v. United States, 366 F.2d 34 (5th Cir. 1966).

## VII

There was competent and substantial evidence upon which the jury could reach its verdict that appellant was guilty beyond a reasonable doubt. It was not error to deny the motion for judgment of acquittal.

Affirmed.